1

2

3

4

5

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\*\*\*

| | |
|---|---|
| LISA M. GIULIANO,<br><br>                    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Commissioner of Social<br>Security,<br><br>                    Defendant. | 2:13-cv-01416-APG-VCF<br><br>**REPORT & RECOMMENDATION** |

This matter involves Plaintiff Lisa M. Giuliano's appeal from Defendant Carolyn W. Colvin's final decision denying Giuliano social security benefits. Before the court is Giuliano's motion to reverse or remand (#16). Colvin filed an opposition (#17).

## BACKGROUND

On January 6, 2010, Plaintiff Lisa M. Giuliano filed her application for disability insurance benefits pursuant to the Social Security Act, 42 U.S.C. §§ 416,423. (*See* Admin. Rec. at 163-169). On January 13, 2010, Plaintiff filed an application for supplemental security income under XVI of the Act. (*See* Admin. Rec. at 170-176). Giuliano's applications were denied initially and upon reconsideration. (*See* Admin. Rec. at 102-05, 110-13, 114-16). On September 21, 2011, Giuliano and her attorney appeared for a hearing before Administrative Law Judge ("ALJ") Craig Ellis. (*See* Admin. Rec. at 44-81). The ALJ issued an unfavorable decision against Giuliano on December 28, 2011, finding that Giuliano's medical impairments did not individually, or in combination, meet the requirements for disability as defined by the Social Security Act. (*See* Admin. Rec. 25-43). Giuliano subsequently filed a timely appeal to the ALJ's decision on February 27, 2012. (*See* Admin. Rec. at 23-24). The Appeals Counsel denied Giuliano's request for review on June, 12, 2013, making the ALJ's decision a final

1   decision of the Commissioner of Social Security. (*See* Admin. Rec. at 8-13). On August 16, 2013,

2   Giuliano commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). (#3).

### STANDARD OF REVIEW

4        The Fifth Amendment to the Constitution protects the citizenry from the deprivation of property

5   by the government without due process of the law. U.S. Const. amend. V. Applicants for social security

6   disability benefits have a constitutionally protected property interest in those benefits. *Gonzalez v.*

7   *Sullivan*, 914 F.2d 1197, 1203 (9th Cir. 1990). When, as here, the Commissioner of Social Security

8   renders a final decision denying a claimant benefits, the Social Security Act provides the District Court

9   appellate jurisdiction to review the Commissioner's decision. *See* 42 U.S.C. § 405(g); *see also* 28 U.S.C.

10  § 636(b) (permitting the District Court to refer matters to a U.S. Magistrate Judge).

11       The Social Security Act limits the District Court's review of final decisions rendered by the

12  Commissioner of Social Security. *See* 42 U.S.C. § 405(g). The court must review the Commissioner's

13  decision to determine if (1) the Commissioner has applied the proper legal standards, and (2) the

14  Commissioner's decision was supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec.*

15  *Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The court may set aside a decision by the Commissioner

16  denying benefits only if the decision is not supported by substantial evidence, or the decision is based on

17  legal error. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "such

18  relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v.*

19  *Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (*quoting Consolidated Edison*

20  *Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938)). Substantial evidence is

21  defined by the court as being "more than a mere scintilla but less than a preponderance." *Bayliss v.*

22  *Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005) (*quoting Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.

23  1999)) *see also Batson*, 359 F.3d 1193. If the evidence is susceptible to more than one interpretation,

24  and the ALJ's decision aligns comports with a reasonable interpretation of the evidence, the court must

25

uphold the ALJ's decision. *Perales*, 402 U.S. at 401. The court reviews the administrative record as a whole. *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989).

The matter before the court is, therefore, not whether the court would have reached a different conclusion, but whether the Commissioner's decision was based on enough evidence from the record to support the conclusion. *Batson*, 359 F.3d at 1193 (defining "substantial evidence"). "Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## DISCUSSION

Giuliano challenges the Commissioner's final decision alleging that the ALJ failed to take into account Giuliano's obesity when assessing Giuliano's Residual Functional Capacity (RFC). Prior to addressing Giuliano's argument the court first discusses the statutory framework from which Giuliano's allegation arises.

### A.      *The Statutory Framework*

President Roosevelt enacted the Social Security Act of 1935 in order "to provide for the general welfare." 79 Cong. Rec. 12793 (1935) (excerpt from Conference Report-Social Security H.R. 7260). The Act furthers "the Nation's basic commitment . . . to foster the dignity and well-being of all persons within its borders," and recognizes that "forces not within the control of the poor contribute to their poverty." *Goldberg v. Kelly*, 397 U.S. 254, 264 (1970). "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2290, 96 L. Ed. 2d 119 (1987).

The claimant bears the initial burden of establishing that they have a disability within the meaning of the Social Security Act in order to qualify for disability benefits. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). The Social Security Act defines disability as the "inability to engage in any

substantially gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

> "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

The Secretary of Social Security "has established a five-step sequential evaluation process for determining whether a person is disabled." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d 119 (1987).

The five-step process is as follows. First, the claimant must show that she is not currently engaged in a substantially gainful activity. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is, then disability benefits are denied. *Id.* Second, the claimant must prove she has a severe medical impairment, or combination of impairments, that "significantly limits her physical or mental ability to do basic work activities." *See* 20 C.F.R. §§ 404.1520(c), 416.920(c); *see also Yuckert*, 482 U.S. at 141. "The ability to do basic work activities is defined as 'abilities and aptitudes to do most jobs.'" *Yuckert*, 482 U.S. at 141. Third, the claimant must be disabled. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d) 416.925, 416.926. Disability is determined in one of two ways. If the claimant can demonstrate that her impairment(s) meet or equal a listed impairment in the social security regulations at 20 C.F.R. Part 404, Subpart P, App. 1, the claimant is presumed disabled without considering age, education, or work experience. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). Otherwise, if a claimant's impairment(s) do not meet or equal a listed impairment, a residual functional capacity assessment will be conducted to determine what your physical and mental limitations are in a work setting. *See* 404.1520(e), 416.920(e).

The residual functional capacity assessment (RFC) is a function-by-function examination of a claimant's ability to perform the physical and mental demands of work-related activities on a "regular and continuing basis" despite limitations from impairments. (SSR 96-8p). The standard for "regular and continuing basis" is measured by an eight hour a day, five day a week work schedule. *Id.* The RFC is used to determine "the most [the claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a). The RFC tests a claimant's physical, mental, and other abilities affected by the claimant's impairments. 20 C.F.R. § 404.1545(b). All relevant medical evidence from the record will be used to determine a claimant's RFC, including evidence of impairments that are not determined to be severe. 20 C.F.R. § 404.1545(a). The totality of all medical and non-medical evidence relating to a claimant's impairment(s) will be assessed to determine the "total limiting effects" of both severe and non-severe impairments. 20 C.F.R. § 404.1545(e).

Once the assessment has concluded, the results will be used to determine what job exertion category the claimant can perform. 20 C.F.R. § 404.1567. There are five job exertion categories: (1) sedentary, (2) light, (3) medium, (4) heavy, and (5) very heavy. *Id.* The RFC, and subsequent job exertion category certification are then used to determine if the claimant satisfies the final two steps of the five-step evaluation process. 20 C.F.R. §§ 404.1545(a)(i), 404.1545(a)(ii).

The fourth step of the process requires the claimant to prove that her impairment(s) prevent her from performing the physical and mental demands of her past relevant work. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f). The RFC will be used to determine if the claimant can in fact perform their past relevant work, based on what job exertion category that job is classified under. *See* 20 C.F.R. § 404.1545; 20 C.F.R. § 404.1545. A claimant will pass step four only if their RFC limits their job exertion to a category lower than the exertion level required to perform their past relevant work. *Id.*

If the claimant satisfies her burden under the previous four steps, the burden then shifts to the Commissioner to prove that the claimant is capable of performing some other substantially gainful work

that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(g); *Yuckert*, 482 U.S. at 145. The claimant's residual functional capacity, age, education, and past work experience, are all factors considered to determine if a claimant is capable of performing some other work in the national economy. *Id.* If the Commissioner proves that a claimant can perform some other suitable work, the claimant is given a chance to rebut by showing she is, in fact, unable to perform that work. *Id.*

The social security disability claim process begins with an initial disability determination by a state agency acting under the authority of the Secretary of Social Security. *See* 42 U.S.C. §§ 421(a), 1383b(a); 20 CFR §§ 404.1503, 416.903 (1986); *see also Yuckert*, 482 U.S. at 142. If the state agency denies the claim, the claimant may subsequently appeal the decision through a three-step administrative review process. *Yuckert*, 482 U.S. at 142. First, the state agency will reconsider the claim *de novo*. *See* 20 C.F.R. §§ 404.909(a), 416.1409(a); *see also Yuckert*, 482 U.S. at 142. Second, the claimant will appear for hearing conducted by an administrative law judge (ALJ) within the Bureau of Hearings and Appeals of the Social Security Administration. *See* 42 U.S.C. §§ 405(b)(1), 1383(c)(1) (1982 ed. and Supp. III); 20 CFR §§ 404.929, 416.1429, 422.201 et seq. (1986); *see also Yuckert*, 482 U.S. at 142. Third, a claimant is entitled to seek review by the Appeals Council of the Social Security Administration. *See* 20 CFR §§ 404.967 et seq., 416.1467 et seq. (1986); *see also Yuckert*, 482 U.S. at 142.

Once a claimant exhausts all three administrative remedies, she may seek review in federal district court. *See* 42 U.S.C. 405(g); *see also Yuckert*, 482 U.S. at 142. However, the District Court's review of final decisions rendered by the Commissioner of Social Security is limited. *See* 42 U.S.C. § 405(g). The court must review the Commissioner's decision to determine if (1) the Commissioner has applied the proper legal standards, and (2) the Commissioner's decision was supported by "substantial evidence." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

***B.     The ALJ's Decision is Supported by Substantial Evidence***

Giuliano disputes the Commissioner's findings alleging that the ALJ's decision regarding Giuliano's RFC was not supported by substantial evidence because the ALJ failed to take into consideration the effects of Giuliano's obesity on her RFC.  In response, the Commissioner argues that the ALJ correctly determined Giuliano's RFC by properly weighing the medical evidence within the record. (Def.'s Opp'n (#3) at 3). For the reasons below, the court finds that the ALJ's decision regarding Giuliano's RFC is supported by substantial evidence.

**1.   The ALJ's Interpretation of Giuliano's RFC is Supported by Substantial Evidence.**

Giuliano contends that the ALJ's determination of Giliano's RFC was not supported by substantial evidence because the ALJ did not expressly discuss the combined effect of Giliano's obesity and her impairments when making his decision regarding her RFC.

This argument is unpersuasive. The only medical evidence within the record that supports Giuliano's contention that she is in fact disabled is the opinions of Drs. Onyema and Lisoskie. (Admin. Rec. at 407, 485). On February 28, 2011, Giuliano was treated at University Medical Center by Dr. Onyema. (Admin. Rec. at 405). Dr. Onyema stated in his treatment notes that that Giuliano is disabled without supporting his contention with objective medical evidence, nor specific medical diagnosis for his conclusion. (*Id.*). Similarly, Dr. Lisoskie treated Giuliano on November 22, 2011 and also stated that Giuliano is disabled, diagnosing her with bipolar disorder, and seizure disorder. (*Id.*).

Standing alone, this evidence cannot overturn the ALJ's decision. Though a treating physician's opinion is typically given greater weight in disability cases it is not binding on the Commissioner or the ALJ. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity," and ultimately determine disability. *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).

Furthermore, "the ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989).

Here, the ALJ's decision regarding Giuliano's RFC is supported by substantial evidence for two reasons: (1) the ALJ was not required to specifically discuss the evidence of Giuliano's obesity because it is not significant nor probative, and (2) the opinions of consultative examiner Dr. Aranas, and Drs. Martin and Comeaux contradict the treating physicians' opinions.

     i.     *The ALJ is not required to discuss all evidence within the medical record when determining a claimant's RFC*

"The Secretary must make fairly detailed findings in support of administrative decisions to permit courts to review those decisions intelligently" *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). However, the ALJ is not required to discuss all evidence within the medical record. *Id.* Rather, the ALJ "need only explain why 'significant probative evidence has been rejected.'" *Heckler*, 739 F.2d at 1394, quoting *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981). Here, the fact that Giliano is obese is neither significant, nor probative.

On August 24, 1999, the Social Security Administration (the Administration) decided to delete listing 9.09, obesity, from the Listing of Impairments in 20 CFR, subpart P, appendix 1 (the listings). The Administration stated that obesity was deleted from the listings "because our experience adjudicating cases under this listing indicated that the criteria in the listing were not appropriate indicators of listing-level severity." (SSR 02-1p). The Administration further stated that "in our experience, the criteria in listing 9.09 did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity." (*Id.*). The Administration does, however, instruct adjudicators to take obesity into account when determining RFC because, when looked at in combination with a claimant's impairments obesity may affect RFC. (*Id.*).

SSR 02-1p instructs adjudicators to use the Clinical Guidelines on the Identification, Evaluation, and Treatment of Overweight and Obesity in Adults (Clinical Guidelines) to determine if a claimant suffers from obesity. (NIH Publication No. 98-4083, September 1998). The Clinical Guidelines indicate that a BMI over 30 is considered obese. (*Id.*). The Clinical Guidelines classify three different levels of obesity: (1) BMI of 30.0-34.9; (2) BMI of 35.0-39.9; and (3) BMI of greater than 40. (*Id.*). The Clinical Guidelines classify the third level of obesity as "'extreme' obesity and representing the greatest risk for developing obesity-related impairments." SSR 02-1p. Absent an express diagnosis of obesity, an adjudicator may resort to their own judgment to determine if a claimant is obese by referring to evidence within the medical record. SSR 02-1p.

On April 29, 2010, Giuliano submitted to an independent, comprehensive physical examination conducted by consultative examiner Dr. Romeo Aranas. (Admin. Rec. at 345-353). Dr. Aranas documented Giuliano's body mass index (BMI) at 34. Using the Clinical Guidelines, it can be determined that Giuliano is obese. However, despite Giuliano's level one obesity, and her degenerative disc desease, Dr. Aranas found that, based on Giuliano's physical examination, Giuliano is capable of lifting and/or carrying fifty (50) pounds occasionally, and twenty (20) pounds frequently, qualifying her for medium exertion level work. (Admin. Rec. at 352).

Dr. Aranas also found that Giuliano is capable of standing and/or walking for six hours or more; and sitting for six hours or more in an eight hour work day; could occasionally climb ladders and scaffolds; and could frequently climb ramps and stairs, balance, bend, stoop, kneel, crouch, and crawl. (*Id.*). Furthermore, Dr. Aranas also indicated that should Giuliano need to alternate sitting and standing, standard breaks and lunch periods would provide sufficient relief. (*Id.*). The findings of consultative examiner Dr. Aranas alone serve as substantial evidence supporting the ALJ's decision regarding Giuliano's functional capacity. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a

consultative examiner's opinion that is based on the examiner's own independent examination of the patient is substantial evidence to support the ALJ's decision regarding a claimant's functional capacity).

Though the ALJ did not expressly mention Giuliano's obesity in making his determination regarding Giuliano's RFC, substantial evidence within the record supports the ALJ's decision. *Id.* Furthermore, the court finds nothing in the record that suggests that Giuliano's obesity significantly affects her RFC, and thus it can be reasonably determined that the evidence of Giuliano's level one obesity is not significant, nor probative.

ii. *The conclusions of Drs. Aranas, Martin, and Comeaux contradict the opinions of Drs. Onyema and Lisoskie regarding Ms. Cranmer's functional capacity*

On April 29, 2010, Giuliano submitted to an independent, comprehensive physical examination conducted by consultative examiner Dr. Romeo Aranas. (Admin. Rec. at 345-353). Dr. Aranas stated in his report that there was "no evidence of kyphosis, scoliosis, or paravertebral muscle spasms" in Giuliano's back and spine. (*See* Admin. Rec. at 238). Dr. Aranas' report indicates that Giuliano is able to flex and extend her spine up to the full range of motion of 90 degrees up and down, and 30 degrees laterally without difficulty. (Admin. Rec. at 351). Dr. Aranas also found no evidence of atrophy or fasciculations, and that Giuliano has a full range of motion in her neck, back, and extremities. (*Id.*). Dr. Aranas' report further states that Giuliano displayed "normal gait, normal weight-bearing, and normal posture." (*Id.* at 348). During the examination Giuliano had no difficulty getting off the exam table, walking on toes and heels, and squatting and rising. (*Id.*). Dr. Aranas concluded that Giuliano is capable of doing medium exertional level work, and also noted that the remainder of Giuliano's physical examination was "unremarkable." (*Id.*).

Similarly, non- treating physicians Drs. Martin and Comeaux reviewed Giuliano's medical records and each found that Giuliano capable of lifting and/or carrying fifty (50) pounds occasionally,

and twenty five (25) pounds frequently; capable of standing and/or walking for six hours or more in an eight hour work day; and sitting for six hours or more in an eight hour work day. (Admin. Rec. at 90-97). "Although the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, it may constitute substantial evidence when it is consistent with other independent evidence in the record." *Halter*, 242 F.3d at 1149. When looked at in context, the opinions of Drs. Aranas, Martin, and Comeaux, together constitute substantial evidence within the record to support the ALJ's decision regarding Giuliano's functional capacity.

ACCORDINGLY, and for good cause shown,

IT IS RECOMMENDED that the Plaintiff Lisa Giuliano's Motion for Reversal (#16) be DENIED.

IS FURTHER RECOMMENDED that the Defendant Carolyn W. Colvin's Motion to Affirm (#17) be GRANTED.

IT IS SO RECOMMENDED.

DATED this 28th day of March, 2014.

CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE